No. 14-1842

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**LIJKEL DIJKSTRA, individually and on behalf
of a class of all other persons similarly situated,**

*Appellee,*

v.

**HARRY J. CARENBAUER; HOME LOAN CENTER, dba LendingTree
Loans; HLC ESCROW,**

*Appellants.*

_____

**Appeal from the United States District Court for the Northern District of
West Virginia, Wheeling Division, Civil Action No. 5:11-CV-00152**
*The Honorable John P. Bailey, District Judge*

_____

**Brief for Appellants**

_____

| | |
|---|---|
| Randall L. Saunders | Joseph S. Dowdy |
| NELSON MULLINS RILEY & | KILPATRICK TOWNSEND & |
| SCARBOROUGH LLP | STOCKTON LLP |
| 949 Third Avenue, Suite 200 | 4208 Six Forks Road, Ste. 1400 |
| Huntington, WV  25701 | Raleigh, North Carolina 27609 |

*Counsel for Appellants Home Loan Center, Inc., HLC Escrow, Inc., and Harry J.
Carenbauer*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __14-1842__     Caption: __Lijkel Dijkstra v. Harry J. Carenbauer, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Home Loan Center, Inc. d/b/a LendingTree Loans ("HLC"), incorrectly identified as Home Loan Center__
(name of party/amicus)

__d/b/a Lending Tree Loans__

 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity? ☐YES ☑NO

2.  Does party/amicus have any parent corporations? ☑YES ☐NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
    The corporate parent of HLC is LendingTree, LLC and the grandparent corporation is Tree.com, Inc.

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐YES ☑NO
    If yes, identify all such owners:
    HLC is wholly owned by LendingTree, LLC, which is not a publicly held corporation.

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?   ☑YES ☐NO
If yes, identify entity and nature of interest:

Tree.com, Inc. which is a publicly held corporation, owns LendingTree, LLC, which owns HLC>

5.   Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?   ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature:  /s/ Joseph S. Dowdy        Date:   November 3, 2014

Counsel for:  Home Loan Center, Inc.

## CERTIFICATE OF SERVICE
****************************

I certify that on   November 3, 2014   the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

John W. Barrett, Esq.
Jonathan R. Marshall, Esq.
Bailey & Glasser, LLP
209 Capitol Street
Charleston, WV 25301
jbarrett@baileyglasser.com
jmarshall@baileyglasser.com

Patricia M. Kipnis, Esq.
135 Kings Highway East, 3rd Floor
Haddonfield, NJ 08033
pkipnis@baileyglasser.com

Michael A. Adams, Esq.
Hinerman & Associates, PLLC
P. O. Box 2465
Weirton, WV 26062
maa@hinermanlaw.com

/s/ Joseph S. Dowdy                        11/03/2014
    (signature)                               (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __14-1842__    Caption: __Lijkel Dijkstra v. Harry J. Carenbauer, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__HLC Escrow, Inc. ("HLC Escrow")__
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☑YES ☐NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
      The corporate parent of HLC Escrow is Home Loan Center d/b/a Lending Tree Loans, the grandparent corporation is Lending Tree LLC, and the great-grandparent corporation is Tree.com

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:
      HLC Escrow is a wholly owned subsidiary of Home Loan Center d/b/a Lending Tree Loans, which is not a publicly held corporation.

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☑YES ☐NO
If yes, identify entity and nature of interest:

Tree.com, Inc. which is a publicly held corporation, owns LendingTree LLC, which owns Home Loan Center d/b/a Lending Tree Loans, which owns HLC Escrow.

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature:  /s/ Joseph S. Dowdy                    Date:    November 3, 2014

Counsel for:  HLC Escrow, Inc.

## CERTIFICATE OF SERVICE
****************************

I certify that on    November 3, 2014    the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

John W. Barrett, Esq.
Jonathan R. Marshall, Esq.
Bailey & Glasser, LLP
209 Capitol Street
Charleston, WV  25301
jbarrett@baileyglasser.com
jmarshall@baileyglasser.com

Patricia M. Kipnis, Esq.
135 Kings Highway East, 3rd Floor
Haddonfield, NJ  08033
pkipnis@baileyglasser.com

Michael A. Adams, Esq.
Hinerman & Associates, PLLC
P. O. Box 2465
Weirton, WV  26062
maa@hinermanlaw.com

 /s/ Joseph S. Dowdy                            11/03/2014
(signature)                                    (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __14-1842__      Caption: __Lijkel Dijkstra v. Harry J. Carenbauer, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Harry J. Carenbauer__
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.      Does party/amicus have any parent corporations?                              ☐ YES ☑ NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                              ☐ YES ☑ NO
        If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _/s/ Joseph S. Dowdy_____    Date: ___November 3, 2014___

Counsel for: _Harry J. Carenbauer_____

## CERTIFICATE OF SERVICE
**************************

I certify that on ___November 3, 2014___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

John W. Barrett, Esq.
Jonathan R. Marshall, Esq.
Bailey & Glasser, LLP
209 Capitol Street
Charleston, WV 25301
jbarrett@baileyglasser.com
jmarshall@baileyglasser.com

Patricia M. Kipnis, Esq.
135 Kings Highway East, 3rd Floor
Haddonfield, NJ 08033
pkipnis@baileyglasser.com

Michael A. Adams, Esq.
Hinerman & Associates, PLLC
P. O. Box 2465
Weirton, WV 26062
maa@hinermanlaw.com

_/s/ Joseph S. Dowdy_____                    ___11/03/2014___
(signature)                                                      (date)

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................1

STATEMENT OF JURISDICTION.................................3

STATEMENT OF THE ISSUES..................................6

STATEMENT OF THE CASE......................................7

STATEMENT OF FACTS ..........................................9

SUMMARY OF ARGUMENT .....................................10

ARGUMENT ......................................................14

I.      Standard of Review........................................14

II.     The District Court Misapplied the Law in Granting Plaintiff
        Summary Judgment and Denying Appellants Summary
        Judgment as to Count I for UPL.................................16

        A.      At the time Plaintiff's loan was closed – on May 25,
                2005 – it was not  unlawful for a notary to provide
                settlement services at a loan closing. ................16

        B.      The record evidence conclusively establishes that, upon
                application of the proper standard, there was no
                unauthorized practice of law with respect to Plaintiff's
                loan, such that the district court erred by not granting
                summary judgment to the appellants as a matter of law....26

        C.      The district court erred by refusing to dismiss Plaintiff's
                UPL claim based on the statute of limitations. ...........28

III.    The district court erred by adjudicating and entering judgment
        in favor of Plaintiff on claims that were not properly included in
        the litigation. ...........................................28

        A.      The district court erred by permitting plaintiff to proceed
                on claims that were not properly pled...................28

B.     The district court erred by re-casting Plaintiff's claim theories for purposes of entering judgment on damages....................30

IV.    Assuming, arguendo, that it was properly introduced, the district court erred by not entering judgment in favor of Appellants on the notary fee claim theory.....................................32

V.     Assuming, arguendo, that it was properly introduced, the district court erred by not entering judgment in favor of Appellants on the WVCCPA unconscionability claim theory. .....................34

VI.    The district court's orders imposing liability and damages based on the retroactive application of later-established legal principles concerning UPL and notary fees run afoul of constitutional due process concerns. ............................................36

VII.   The district court erred by imposing damages and punitive civil penalties that are unsupported by evidence or by law..................39

A.     The requirement for refunds to class members and the statutory civil penalty awards should be reversed because they are inconsistent with *McMahon II*................................40

B.     The civil penalty awards should be reversed on constitutional principles because they were entered without fair notice and were arbitrary.................................43

C.     The district court erred by awarding any damages and civil penalties because there was no finding of a complete violation of the WVCCPA. .................................................44

D.     To the extent it could award civil penalties at all, the district court erred and abused its discretion by enhancing the civil penalties above the minimum possible penalty because Plaintiff presented no evidence that would justify an enhancement. ..................................................................45

VIII.  The Judge Erred By Certifying the Class, By Declining to Decertify the Class, and By Entering an Order on Class

US2008 6105817 13

Damages Without Competent Evidence of Proper Notice to the
Class..................................................................................................47

 A. The district court applied the wrong standard to UPL
  claims and improperly certified a class that fails to meet
  the commonality and typicality requirements of Rule 23
  (a)..........................................................................................47

 B. The excessive notary fee theory should not have
  proceeded on a class basis...................................................49

 C. The unconscionability claim also should not have
  proceeded on a class basis...................................................51

 D. Plaintiff failed to show that proper notice was provided to
  class members......................................................................52

CONCLUSION............................................................................................55

REQUEST FOR ORAL ARGUMENT .......................................................55

US2008 6105817 13

# TABLE OF AUTHORITIES

## Cases

*BMW of N. Am., Inc. v. Gore*,
  517 U.S. 559 (1996) ........................................................................36

*Clements v. HSBC Auto Fin., Inc.*,
  No. 5:09-CV-00086, 2011 WL 2976558 (S.D.W. Va. July 21,
  2011)..............................................................................................46

*Cloaninger v. McDevitt*,
  555 F.3d 324 (4th Cir. 2009).........................................................30

*Dan Ryan Builders, Inc. v. Nelson*,
  230 W. Va. 261, 737 S.E.2d 550 (2012).........................................35

*Dieter v. Microsoft Corp.*,
  436 F.3d 461 (4th Cir. 2006)..........................................................48

*Dijkstra v. Carenbauer*,
  No. 5:11CV152, 2012 WL 1533485 (N.D.W. Va. May 1, 2012) ......................31

*Elmore v. Corcoran*,
  913 F.2d 170 (4th Cir. 1990)..........................................................16

*Erickson v. Pardus*,
  551 U.S. 89 (2007) .........................................................................30

*Ewers v. Montgomery*,
  68 W. Va. 453, 69 S.E. 907 (1910)................................................33

*Fed. Commc'n Comm'n v. Fox Television Stations, Inc.*,
  132 S. Ct. 2307 (2012) ...................................................................37

*Finney v. MIG Capital Mgmt., Inc.*,
  No. 2:13-02778, 2014 WL 1276159 (S.D.W. Va. Mar. 27, 2014)......................46

*Forgay v. Conrad*,
  47 U.S. (6 How.) 201, 12 L. Ed. 404 (1848) .......................................5

- v -

*Gillespie v. United States Steel Corp.*,
   379 U.S. 148 (1964) .......................................................................4

*Grayned v. City of Rockford*,
   408 U.S. 104 (1972) .....................................................................16

*Hathcock v. Navistar Int'l Transp. Corp.*,
   53 F.3d 36 (4th Cir. 1995)............................................................15

*Heavener v. Quicken Loans, Inc.*,
   No. 3:12-CV-68, 2013 WL 2444596 (N.D.W.Va. June 5, 2013).......................28

*Holmes v. Chesapeake Appalachia, LLC*,
   No. 5:11-CV-123, 2012 WL 3647674 (N.D.W.Va. Aug. 23, 2012) ..................34

*In re Constar Int'l Inc. Sec. Litig.*,
   585 F.3d 774 (3d Cir. 2009)..........................................................49

*Jiminez v. Mary Washington Coll.*,
   57 F.3d 369 (4th Cir. 1995)..........................................................14

*Kelly v. Lee's Old Fashioned Hamburgers, Inc.*,
   908 F.2d 1218 (5th Cir. 1990) ........................................................5

*King v. Burwell*,
   759 F.3d 358 (4th Cir. 2014)..........................................................14

*May v. Nationstar Mortg., LLC,*
   No. 3:12-CV-43 (GROH), 2012 U.S. Dist. LEXIS 102956
   (N.D.W.Va., July 24, 2012). ................................................ 21, 25, 28

*McMahon v. Advanced Title Servs. Co. of W. Va.*,
   216 W. Va. 413, 607 S.E.2d 519 (2004)................................. 18, 23,25

*McMahon v. Advanced Title Servs. of W. Va.,*
   Civ. A. No. 01-C-121 (Brooke Cnty., W. Va. Cir. Ct. Mar. 31,
   2010)........................................................................................19

*McMahon v. Advanced Title Servs. of West Va.,*
   Case No. 101027 (W. Va Jan. 11, 2011 *nunc pro tunc* Nov. 17,
   2010)................................................................................ 20, 21

- vi -

*Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Corp.*,
    65 F.3d 1113 (4th Cir. 1995)..................................................................14

*Pinkley, Inc. v. City of Frederick, MD.*,
    191 F.3d 394 (4th Cir. 1999)........................................................ 15, 16

*Robinson v. Quicken Loans Inc.*,
    Civ. Act. No. 3:12–0981, 2012 WL 3670391 (S.D.W. Va. Aug. 24,
    2012)...........................................................................................................35

*Scott v. Family Dollar Stores, Inc.*,
    733 F.3d 105 (4th Cir. 2013)....................................................................5

*Shelton v. Wells Fargo Bank*,
    No. 3:09-cv-19, 2010 U.S. Dist. LEXIS 143609 (N.D.W.Va. Aug.
    13, 2010) ......................................................... 20, 21,  25, 26, 38, 46

*State ex rel. Frieson v. Isner*,
    168 W. Va. 758, 285 S.E.2d 641 (1981)...............................................22

*State ex rel. Nationwide Mut. Ins. Co. v. Karl*,
    222 W. Va. 326, 664 S.E.2d 667 (2008).............................................22

*Thorn v. Jefferson-Pilot Life Ins. Co.*,
    445 F.3d 311 (4th Cir. 2006)........................................................ 15, 48

*Tri–Tron Int'l v. Velto*,
    525 F.2d 432 (9th Cir. 1975).................................................................15

*Troy Mining Corp. v. Itmann Coal Co.*,
    176 W. Va. 599, 346 S.E.2d 749 (W. Va. 1986) .................................51

*United States v. United States Gypsum Co.*,
    333 U.S. 364, 68 S. Ct. 525, 92 L. Ed. 746 (1948)..............................15

*United Transp. Union v. S. Carolina Pub. Ry. Comm'n*,
    130 F.3d 627 (4th Cir. 1997).................................................................15

*Vanderbilt Mortg. and Fin., Inc. v. Cole*,
    230 W. Va. 505, 740 S.E.2d 562 (2013).................................... 43, 46

- vii -

*Wahi v. Charleston Area Med. Ctr., Inc.*,
  562 F.3d 599 (4th Cir. 2009)...............................................................30

*Walker v. Kelly*,
  593 F.3d 319 (4th Cir. 2010)...............................................................15

*Wal-Mart v. Dukes*,
  131 S. Ct. 2541 (2011)........................................................................48

**<u>Statutes</u>**

28 U.S.C. § 1291 ....................................................................................4

28 U.S.C. § 1292(b) ...............................................................................6

W. Va. Code § 29C-1-101 *et seq*. ........................................................32

W. Va. Code § 29C-4-301 ............................................................... 32, 50

W. Va. Code § 46A-1-101, *et seq* .........................................................6

W. Va. Code § 46A-2-121 .....................................................................6

W. Va. Code § 46A-5-101(1) ......................................................... 45, 46

W. Va. Code § 46A-5-101(8) ...............................................................46

W. Va. Code § 46A-5-106 .....................................................................45

W. Va. Code § 55-2-12(a).............................................................. 28, 34

W. Va. Code § 59-1-11 (2013) ...................................................... 32, 50

W. Va. Code § 59-1-7 ..................................................................... 32, 50

**<u>Rules</u>**

Fed. R. Civ. P. 8(a)(2) ..........................................................................30

Fed. R. Civ. P. 23 advisory committee note (1966) ..............................53

Fed. R. Civ. P. 54(b) ..............................................................................5

US2008 6105817 13

**<u>Other Authorities</u>**

W. Va. Code State Cr. R., *"Definition of the Practice of Law,"* 961
(2013) ................................................................................................22

Appellants Home Loan Center, Inc. ("HLC"), HLC Escrow, Inc. ("HLC Escrow"), and Harry J. Carenbauer ("Mr. Carenbauer") (collectively "appellants") respectfully submit this opening brief in the above-captioned appeal.  Though all claims as to HLC Escrow and Mr. Carenbauer have been resolved, neither Plaintiff, nor the district court, has confirmed that they no longer need to participate in this case.  In the proceedings below, Plaintiff did not seek the certification of any claims against Carenbauer, and Plaintiff treated HLC escrow as if it was a single entity, along with HLC, that Plaintiff referred to as "LendingTree."   Accordingly, in an exercise of caution, HLC Escrow and Carenbauer join in this brief as "appellants" to the extent it is deemed necessary for them to have done so, notwithstanding their contention that they should be dismissed from the litigation.

## <u>INTRODUCTION</u>

The present case arises from unusual circumstances involving, *inter alia*: (1) retroactive application of the law to support class certification, liability, and significant civil penalties, and (2) judgment on claim theories that were never pled.  Specifically:

- The case began, at least as it related to appellants, as a proposed class action case asserting that one or more of the appellants had engaged in the unauthorized practice of law ("UPL") because a notary, rather than an

1

attorney, collected Plaintiff's signatures at the May 25, 2005 closing of a real estate mortgage refinance loan underwritten by HLC.

- Prior to November 17, 2010, West Virginia law permitted notaries to obtain signatures at closing so long as the notaries were performing ministerial or clerical functions and did not dispense legal advice in response to borrower inquiries or otherwise.

- Notwithstanding that the vast majority of the class members' loans were closed prior to November 17, 2010 (and thus required an individualized inquiry with respect to whether UPL occurred), the district court certified the case as a class action.

- Then, although Plaintiff never amended his complaint, the court permitted Plaintiff to proceed on class-wide claim theories of procedural unconscionability based on UPL and excessive notary fees.

- The district court denounced a prior order that it had written in a different case (and ignored several other cases) establishing an individualized inquiry for pre-2010 UPL claims, and Plaintiff actually obtained class-wide summary judgment on his UPL declaratory judgment claim and upon his unpled unconscionability theory, as well as his unpled claim theory for excessive notary fees.

- Though there was no evidence of that appellants had intended to commit UPL (if there was UPL) or that any class member had actually paid more in notary fees than is permitted by law, the district court proceeded to enter "partial final judgment" on the class claims pursuant to which it: (1) imposed an escalated, class-wide statutory civil penalty award of $2,000 on an unpled claim for procedural unconscionability based on UPL; (2) imposed a near-class-wide statutory civil penalty on an unpled claim asserting excessive notary charges; and (3) imposed a near-class-wide damages award requiring a refund of all notary fees collected by HLC from the class members.

- The district court also ordered that, *after* payment of the statutory penalties and refunds to the class members, the district court would hold

2

individual trials for those class members who come forward with evidence of damages that are not included within the foregoing categories.

- Plaintiff has threatened a collection action and has received an order from the district court allowing discovery in pursuit of collection efforts.

The present appeal seeks correction of the district court's erroneous rulings before such relief is nugatory.

## STATEMENT OF JURISDICTION

This appeal seeks review of an order on class damages entered by the district court on July 16, 2014. This appeal also seeks review of several underlying orders upon which that damages order necessarily rests, including, without limitation, an order allowing summary judgment to Plaintiff on liability, an order on class certification, and an order declining to dismiss or exclude certain claims or claim theories from the present litigation. The July 16, 2014 order is immediately appealable because: (1) the district court made a final decision (a) awarding statutory damages under the West Virginia Consumer Credit and Protection Act, and (b) requiring refunds of notary fees to borrowers, and the district court referred to its decision as a "***partial final judgment on class damages***" (JA 1297); (2) the district court "***finally***" certified a class of 692 West Virginia borrowers as a precondition to that ""partial final judgment on class damages" (JA 1297); and (3) the district court indicated, or, at a minimum, strongly implied that the court would

3

not take any further action (including possible individual damages trials) until the statutory damages and refunds were paid to the class members. (JA 1300.)

The July 16, 2014 order is a final order pursuant to 28 U.S.C. § 1291. "[A] decision 'final' within the meaning of § 1291 does not necessarily mean the last order possible to be made in a case." *Gillespie v. United States Steel Corp.*, 379 U.S. 148, 152 (1964). Rather, in determining whether an order is final, the courts should take a practical approach, weighing "the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other." *Id.* at 152-53. The district court's July 16, 2014 order is final as to all things that it address, and as those items will not change, an immediate review presents no concern of piecemeal review. On the other hand, there will be serious prejudice to appellants (and to the courts) if review is delayed, as appellants might be required to make the immediate payment of statutory damages to avoid further collection efforts and because of the possibility that individual numerous damages trials will be needlessly conducted if this court later reversed the district court's rulings. Accordingly, the July 16, 2014 order is final pursuant to 28 U.S.C. § 1291.

The July 16, 2014 order also is immediately appealable pursuant to *Forgay v. Conrad*, 47 U.S. (6 How.) 201, 204, 12 L. Ed. 404 (1848) because it directs the

4

payment of a certain sum of money to the complainant, and the complainant contends that he is entitled to have such decree carried immediately into execution.

Finally, the July 16, 2014 order on class damages is immediately appealable pursuant to Federal Rule of Civil Procedure 54(b), which permits appeals of partial final judgment orders.[1]  "[I]f the language in the order appealed from, either independently or together with related portions of the record referred to in the order, reflects the district court's unmistakable intent to enter a partial final judgment under Rule 54(b), nothing else is required to make the order appealable." *Kelly v. Lee's Old Fashioned Hamburgers, Inc.*, 908 F.2d 1218, 1220 (5th Cir. 1990).  The district court actually referred to the July 16, 2014 order as a "partial final judgment" (JA 1297) and indicated in a subsequent order allowing 28 U.S.C. § 1292(b) certification that there was no just reason for belay because "an immediate appeal may materially advance the ultimate termination of the

---

[1] The February 24, 2014 summary judgment order is also a partial final judgment as to the UPL declaratory judgment claim because it terminates the litigation as to that claim.  Although the district court initially denied a request to certify the order as partial final prior to the resolution of the individual claims, the district court ultimately entered an order certifying a 1292(b) interlocutory appeal following entry of the July 16, 2014 order on class damages, which is indicative of the district court's belief that there was no just reason to delay an appeal based on the current posture.  Accordingly, both prongs of the Rule 54(b) analysis are satisfied with respect to the February 26, 2014 Order.  Further, the remaining orders appealed from including rulings that are "inextricably intertwined" with the rulings in the February 24, 2014 Order, such that this court may exercise pendent appellate jurisdiction.  *Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105 (4th Cir. 2013).

5

litigation" and that "in the event of a successful appeal, judicial resources will be spared which would otherwise be spent on individual trials."  (JA 1321.)

## STATEMENT OF THE ISSUES

I.     Whether the district court erred not entering judgment in favor of appellants on Plaintiff's claim for a declaratory judgment that notary closings constituted UPL when (A) the prevailing legal standard at the time Plaintiff's loan closed (and the majority of the class members' loans closed) required as an element of UPL that the notary dispense legal advice (B) no legal advice was given to Plaintiff at closing, (C) Plaintiff failed to prove that an attorney would have advised him not to accept the loan, and (D) Plaintiff's UPL claim was time barred.

II.     Whether the district court erred by declining to dismiss the unconscionability and excess notary fee claim theories and by finding liability and imposing separate statutory civil penalties on these theories given that they were never properly asserted in the litigation.

III.     Whether the district court erred by denying summary judgment to appellants on Plaintiff's unpled excessive notary fee theory, which was premised upon a misinterpretation of the allowable charges by notaries, was contrary to the evidence concerning what notarial services were offered, and was time barred.

IV.     Whether Summary judgment should have been granted to the appellants on Plaintiff's unpled unconscionability claim because plaintiff could not establish procedural and substantive unconscionability.

V.     Whether the due process clause forbade the district court from retroactively applying of the 2010 test for determining UPL to conduct that had occurred previously, when a different legal test for UPL had been adopted by the courts, and when defendants were not on notice that they could be subject to liability and civil penalties at the time they engaged in the conduct.

6

US2008 6105817 13

VI.    Whether the district court erred by awarding damages and civil penalties which were inconsistent with West Virginia precedent, constitutional due process protections and competent evidence in the record.

VII.    Whether the district court erred by allowing class action treatment of the class-certified claims when predominance, typicality and commonality were lacking and when the procedural requirements of Rule 23 were not demonstrably satisfied.

## STATEMENT OF THE CASE

On November 7, 2008, Plaintiff filed his class action complaint.  (JA 27.) The district court *conditionally* certified four claims for class treatment against the present appellants: (1) declaratory judgment, (2) contempt of court, (3) "overcharging," and (4) violations of the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-1-101, *et seq.* (the "WVCCPA").  (JA 247.) The first two claims assert that HLC engaged in the UPL.  The overcharging claim improperly evolved, without amendment,  into a claim that plaintiff had been charged excessive notary fees, and the WVCCPA claim evolved from a theory of unfair and deceptive acts to a theory of unconscionability under W. Va. Code § 46A-2-121 and Plaintiff eventually also sought to recover under the WVCCPA for allegedly excessive notary charges.  All other claims in the case have been settled or dismissed.

In its conditional certification order, the district court determined that the criteria for certification of a class under Rule 23(b)(3) had been satisfied and

7

defined the class to include: "All West Virginia consumers who obtained mortgage loans through [HLC], and whose loans were closed by persons not admitted to the practice of law in West Virginia or by persons not under the direct supervision of a lawyer admitted to the practice of law in West Virginia, and whose loans were in effect at any time after November 8, 2007." (JA 262.) HLC petitioned this Court for permission to appeal the conditional certification order. This Court denied that petition without explanation. (JA 264.)

The district court determined that there were 692 loans in the class that were closed between June 23, 2003 and May 7, 2012, and most of the loans were closed prior to November 10, 2010 – a date that is significant for UPL claims as is explained below. (JA 1297.)

On October 30, 2013, HLC filed a motion to decertify the class, and the parties filed cross motions for summary judgment. (JA 265, 282, 328.) By Order entered February 26, 2014, the district court (1) denied the motion to decertify, (2) denied HLC's motion for summary judgment, except as to the claim for contempt of court, which was dismissed, and (3) allowed Plaintiff's motion for summary judgment with respect to the declaratory judgment, overcharging of notary fees, and procedural unconscionability claims. (JA 742.) Thereafter, Plaintiff's non-class claims were resolved, and the district court directed Plaintiff to submit

US2008 6105817 13

evidence that notice had been provided to the class and directed the parties to submit briefing on the issue of class damages. (JA 933.)

Following the submission of damages briefing, the district court entered its July 16, 2014 Order in which it: (1) "amend[ed] its previous order conditionally certifying the class, and . . . finally certify[ied] the class on a non-provisional basis" (JA 1297); (2) awarded two separate class-wide statutory penalties of $2,000 for violations of the WVCCPA, and (3) ruled that, after payment of the civil penalties, the district court will hold individual damages trial for all of the 692 class members who come forward with evidence of actual damages. (JA 1297-1300.) Following the entry of the July 16, 2014 order, appellants appealed to this Court. (JA 1315)

## STATEMENT OF FACTS

Plaintiff Lijkel Dijkstra ("Plaintiff"), applied for and received a home mortgage refinance loan for his residence in the original principal amount of $114,350.00 ("Subject Loan"), with HLC as the initial lender. (JA 747.) The signature portion of the loan closing was conducted on May 25, 2005 by Harry J. Carenbauer, a West Virginia notary public, without supervision of an attorney. Mr. Carenbauer simply presented loan documents to plaintiff, indicated where plaintiff should sign his name or initial the documents, witnessed and notarized the

9

execution of the documents, made appropriate copies, and sent the documents to HLC; Mr. Carenbauer did not answer any legal questions or provide any legal advice. *(Id.)*

Plaintiff is a Dutch immigrant who claims that he does not read or speak English well. (JA 748.) Though plaintiff had no questions to ask at the closing, the district court found in its summary judgment order that "the use of a notary foreclosed the opportunity that the plaintiff would have had to ask questions about the documents or the terms of the loan, which, in Mr. Dijkstra's case, resulted in his refinancing to a *higher* interest rate than he had prior to the refinancing." (JA 760) (emphasis in original). Plaintiff presented no evidence of either the circumstances of any other class member's closing (other than that the signatures were obtained by various notaries without attorney involvement) or of the terms of any other class member's loan.

## **SUMMARY OF ARGUMENT**

Numerous errors occurred in the proceedings below with respect to, inter alia, the following issues:

**UPL.** Only one of the claims upon which plaintiff recovered was actually pled: Plaintiff's claim for declaratory judgment based on his assertions of UPL. Summary judgment should have been granted to the appellants on that claim,

US2008 6105817 13

however, because notary-witnessed closings in which no legal advice was dispensed did not constitute UPL based on case law prevailing in 2005 when Plaintiff's loan was closed. It was not until November 17, 2010 that the West Virginia Supreme Court of Appeals – the only body with the authority to define what constitutes the practice of law – affirmed a ruling by a West Virginia trial court that non-attorney closings could be unlawful even if no express legal advice was given. The record does not support a finding that UPL occurred with respect to named Plaintiff's loan – or any class member's loan that was closed prior to November 17, 2010 (at the earliest) – because there is no evidence that any legal advice was given. Further, there is no evidence that the presence of any attorney would have resulted in Plaintiff declining to accept the loan with HLC. In any event, Plaintiff's UPL claim was time barred and should have been dismissed in response to Defendants' Rule 12(b)(6) motion.

**Claim Manipulation And Metamorphosis.** The district court erroneously ruled in Plaintiff's favor on unpled claims theories asserting unconscionability under the WVCCPA and a common law claim for excessive notary fees. These claims should have been dismissed or excluded from the litigation because they were not pled and because the pleadings were not properly amended to include them. The district court compounded its error by changing its characterization of

11

the WVCCPA claim to include the notary fee claim theory, thereby subjecting defendants to the prospect of a second civil penalty that was not anticipated following the entry of the district court's summary judgment order, which did not include any analysis of the notary fee theory in the discussion of the WVCCPA claim.

**Notary Fee Theory.**  Summary judgment should have been granted to the appellants on Plaintiff's excessive notary fee theory because the theory was premised upon Plaintiff's misinterpretation of the items for which a notary could charge.  The record evidence demonstrated that Plaintiff was not overcharged, and Plaintiff introduced no evidence that any member of the class had been overcharged for notary services.  Further, the claim should have been dismissed as time-barred.

**Unconscionability.**  Summary judgment should have been granted to the appellants on Plaintiff's unpled unconscionability claim because plaintiff could not establish procedural and substantive unconscionability.

**Due Process.**  The district court's retroactive application of the 2010 test for determining UPL to conduct that had occurred previously, when a different legal test for UPL had been adopted by the courts, was unconstitutional because

US2008 6105817 13

defendants were not on notice that they could be subject to liability and civil penalties at the time they engaged in the conduct.

**Damages and Civil Penalties.**  The district court's order on class damages contravened the precedent of the West Virginia Supreme Court of Appeals, which holds that damages and penalties should not be awarded in response to conduct that would violate the new standard for UPL but which occurred prior to the change in the law.  The district court's imposition of civil penalties also violated the constitutional due process guaranty of advance notice that conduct may subject one to civil penalties and constitutional protections against arbitrariness.  It also was unsupported by competent evidence in the record, and the district court abused its discretion by enhancing the civil penalty when there was no evidence of any aggravating factors.

**Class Certification.**  The district court erred by proceeding with the case as a class action when commonality, typicality, and predominance were lacking and when Plaintiff failed to properly demonstrate that adequate notice had been given to the class.

13

US2008 6105817 13

# ARGUMENT

## I.    STANDARD OF REVIEW.

The present appeal involves challenges to several different types of rulings made by the district court.  The appeal challenges the district court's legal rulings concerning whether certain claims were plausible as a matter of law or whether they should be dismissed, what constituted UPL, whether notary charges exceeded a certain threshold, whether damages and statutory penalties could be permissibly awarded consistent with constitutional and common law limitation, and whether any evidence existed to support a claim.  With respect to such legal questions, including questions of statutory interpretation and constitutionality, the court of appeals reviews a district court's conclusions *de novo*.  *See King v. Burwell*, 759 F.3d 358, 367 (4th Cir. 2014); *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Corp.*, 65 F.3d 1113, 1123 (4th Cir. 1995).  In each instance, the district court's legal conclusions were erroneous, and they should be substituted for this Court's proper interpretation of the law.

The appeal also challenges the district court's factual findings, to the extent it purported to make any.  Particularly, to the extent the district court purported to make factual findings to support class certification or its class damages awards, such findings are subject to review for whether they are "clearly erroneous," which

occurs if they are "contrary to the clear weight of the evidence considered in light of the entire record" or if a "'reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 379 (4th Cir. 1995) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S. Ct. 525, 542, 92 L. Ed. 746 (1948)).  As the district court made no findings that were supported by competent evidence in the record, and, as such, any findings by the district court should be vacated and reversed.

The court of appeals reviews a district court's factual finding or legal conclusion "'in its true light, regardless of the label that the district court may have placed on it.'" *Walker v. Kelly*, 593 F.3d 319, 328 (4th Cir. 2010) (quoting *Tri–Tron Int'l v. Velto,* 525 F.2d 432, 435 (9th Cir. 1975)).  A district court's labeling of its determinations as "legal conclusions" or "factual findings" is "immaterial to [the appellate court's] review." *Id.* at 328, n.3.

In the proceedings below, Plaintiff argued that the district court had discretion with respect to the class certification decision and the decision concerning the amount of any civil penalties.  However, it is "per se" an abuse of discretion when a district court "makes an error of law or clearly errs in its factual findings." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 317 (4th Cir.

15

2006); *see also United Transp. Union v. S. Carolina Pub. Ry. Comm'n*, 130 F.3d 627, 631 (4th Cir. 1997) ("[A] district court's action that is based on an error of law is a per se abuse of discretion."). Additionally, it is abuse of discretion where a district court's findings, including its imposition of a penalty, do not display "prudence and discretion." *Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 42 (4th Cir. 1995). Thus, to the extent the district court purported to exercise its discretion, it abused that discretion.

## II.  THE DISTRICT COURT MISAPPLIED THE LAW IN GRANTING PLAINTIFF AND THE CLASS MEMBERS SUMMARY JUDGMENT AND DENYING APPELLANTS SUMMARY JUDGMENT AS TO COUNT I FOR UPL.

The Plaintiff's class claim against Defendants for UPL, and the district court's liability rulings on UPL, rest upon the following formula for determining liability:

| *Even prior to* November 17, 2010, | *if* a notary or other non-lawyer not acting under the supervision of a lawyer conducted the buyer and borrower signature portion of a real estate, closing | *then* UPL as defined by West Virginia law necessarily occurred. |
|---|---|---|

The district court's adoption of this formula in its February 24, 2014 Order ignored the development of the law and improperly failed to analyze the specific conduct at issue in this case, which did not constitute UPL.

16

**A.**     **At the time Plaintiff's loan was closed – on May 25, 2005 – it was not unlawful for a notary to provide settlement services at a loan closing.**

For the district court's formula to work, it must be the case that, during the relevant time period, there was some legally binding statute, rule, decision, or regulation defining UPL to include notary closings. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) (holding that it is "a basic principle of due process," that laws must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly"). The problem with Plaintiff's case, and the flaw in the district court's analysis below, is that there was no such definitive pronouncement during the relevant time period. Rather, there was an evolution in the law in West Virginia ultimately culminating in a decision, effective at the earliest on November 17, 2010, that such notary closings were UPL. That evolution is best demonstrated by the timeline set out below, which is juxtaposed against the relevant events in this case:

- Pre-2003:   Even Plaintiff does not contend that notary closings during this time period were UPL.

- 2003: The Unauthorized Practice of Law Committee of the West Virginia State Bar (the "UPC") issued Opinion 2003-01. The Opinion states:

> While some ministerial and clerical functions occur as part of a real estate closing, i. e., preparation of the HUD settlement statements, simple execution of documents, and disbursement of proceeds, in general, legal principles

17

> are applied to the factual situation to determine if and how the transaction should be concluded. For example, there is a determination that the lender can obtain a valid first lien; that the legal description of the land conforms to the survey; that the title insurance requirements have been met; that evidence of hazard insurance is sufficient; that easements and other restrictions have been noted and have not been violated or encroached upon; and that legal instruments have been properly signed to constitute binding documents to achieve their legal purposes. Most importantly, however, it is inherent at the closing itself that buyers and sellers will have questions about the transaction and the documents, which answers necessarily go to their respective legal rights and obligations. Such answers are advising on legal matters. Thus, in West Virginia, generally, real estate closings constitute the practice of law.

(JA 86.) To the extent this Opinion carried the force of law, it did not clearly establish whether the notary's collection of signatures, without more, constituted UPL. In fact, as is demonstrated below, that issue would be actively litigated for seven more years.

- June 2001: Litigation was initiated in a West Virginia trial court based on the confusion regarding, *inter alia*, whether a lay person's obtaining of signatures at closing constituted [UPL]. (JA 106.) Given its scope and potential to impact the law, that litigation ultimately expanded to include the West Virginia State Bar, the West Virginia Bankers Association, Inc., and the West Virginia Association of Community Bankers, Inc. As the parties all agreed at the termination of that litigation in the consent order submitted to the state trial court, the purpose of that litigation was "to clearly define what constitutes [UPL] in the State of West Virginia relating to real estate transactions of property located within the boundaries of this State." (JA 108-9.) No such clarification would have been needed, if, as Plaintiff contends and as the district court concluded, the law was already clear.

18

- September 8, 2004 – The West Virginia trial court concluded, in response to a special interrogatory that "a lay person not under the direct supervision or control of an attorney licensed to practice law in the State of West Virginia engaged in [UPL] by performing the function of the 'closing agent' for mortgage financing or real estate transactions when part of his or her responsibilities as closing agent consist of: . . . instructing clients in the manner in which to execute legal documents."

- December 3, 2004 – The West Virginia Supreme Court of Appeals vacated the above-quoted portion of the state trial court's order and remanded the Order for further factual development.  Neither Plaintiff, nor the district court, appears to have a good answer for why a remand for further factual development would be necessary if notary loan closings were *per se* UPL. *McMahon v. Advanced Title Servs. Co. of W. Va.*, 216 W. Va. 413, 416, 607 S.E.2d 519, 522 (2004) ("*McMahon I*").

- May 25, 2005 – The named Plaintiff, Mr. Dijkstra, closed on his mortgage refinance loan with HLC.  Appellant Carenbauer was the notary who witnessed Plaintiff's signing and initialing of the loan documents at closing.  It is undisputed that Plaintiff did not ask any questions of Mr. Carenbauer and that Mr. Carenbauer did not verbalize any legal advice.

- November 7, 2008 – Plaintiff filed his lawsuit in the case sub judice.

- March 2009 – The American Bar Association issued a fifty-state survey of unauthorized practice of law committees.  A chart accompanying that survey listed for West Virginia: "Nonlawyers may engage[] in the following: . . . Attend real estate closings."  (JA 932.)

- March 31, 2010 – The West Virginia trial court issued a stipulation and agreed order concluding that, *inter alia,* that, lawyers generally are required to conduct or supervise mortgage loan closings. *See McMahon v. Advanced Title Servs. of W. Va.,* Civ. A. No. 01-C-121, at 49-58 (Brooke Cnty., W. Va. Cir. Ct. Mar. 31, 2010).  (JA 106.)  That stipulation and agreed order specifically provided that:

> The Corporate Defendants are immediately and permanently enjoined from conducting any business that is adverse to or in violation of the provisions of this [o]rder.
>
> Interveners [the West Virginia Bankers Association, Inc. and the West Virginia Association of Community Bankers, Inc.] shall have forty-five ( 45) days from the date of the Entry of this Order to notify their members of the provisions of this [o]rder. After the expiration of this time, Interveners will be permanently enjoined from conducting business that is adverse to or in violation of the provisions of this [o]rder.
>
> . . .
>
> Neither the Interveners, nor their members shall be assessed any monetary damages, costs or attorney-fees in this action.

(JA 124.)

- August 13, 2010 – The Honorable John P. Bailey, the very district court judge presiding below in the present case, granted summary judgment to a lender on a UPL claim asserting the same facts that are at issue in this case: "The services provided by [the notary] at the closing were simply ministerial and clerical functions which routinely occur as part of a real estate closing and which the [UPC] has held do not constitute the practice of law. *See* [Advisory Opinion] 2003-01(5). . . . [T]he plaintiff has set forth no evidence that she ever asked or that the defendants ever provided any legal advice at the closing." *Shelton v. Wells Fargo Bank*, No. 3:09-cv-19, 2010 U.S. Dist. LEXIS 143609, at **12-13 (N.D.W.Va. Aug. 13, 2010). Four years later Judge Bailey reneged on this ruling in the case *sub judice*. (JA 756) ("This Court is aware of its own decision in *Shelton v. Wells-Fargo Bank*, 2010 U.S. Dist. Lexis 143609 (N.D.W. Va. Aug. 13, 2010), where this Court noted that the notary in that case provided simply ministerial and clerical functions which did not constitute [UPL]. In that decision, this Court unfortunately misread the 2003 opinion of the Unlawful Practice Committee

20

and was wrong."). It remains unclear why, if the law was sufficiently unclear to confuse a sitting district court judge, that same district court judge should impose a harsh civil penalty against appellants in this case for being similarly "incorrect" about the law concerning the same relevant time period.

- January 27, 2011, *nunc pro tunc* November 17, 2010 (JA 104) – The West Virginia Supreme Court of Appeals affirmed the above-referenced March 31, 2010 trial court order in *McMahon*, without limitation, and held that it was "plainly right." *McMahon v. Advanced Title Servs. of West Va.,* Case No. 101027 (W. Va Jan. 11, 2011 *nunc pro tunc* Nov. 17, 2010) ("*McMahon II*"). It was at this point, at the earliest, that the rulings made by the *McMahon* trial court in the March 31, 2010 stipulation and agreed order had any general applicability.

- Later in 2011 – The UPC adopts, in Advisory Opinion No. 2010-02, the March 31, 2010 trial court order in McMahon as affirmed by the West Virginia Supreme Court of Appeals. (JA 136.)

- July 24, 2012 – The Honorable Gina Groh, also sitting in the Northern District of West Virginia, concluded that the McMahon ruling was not retroactive and that the notary present at the closing of that pre-2010 loan provided only ministerial and clerical services that did not constitute UPL. *See May v. Nationstar Mortg., LLC,* No. 3:12-CV-43 (GROH), 2012 U.S. Dist. LEXIS 102956, at *19-20 (N.D.W.Va., July 24, 2012). In the proceedings below in the case *sub judice*, the district court entirely ignored the existence of the *May* decision.

- February 26, 2014 – In the case *sub judice*, the district court entered an order granting summary judgment on liability to Plaintiff on the theory that, prior to November 2010, notary closings involving only the notary collecting signatures at closing constituted UPL. (JA 742.) This ruling discarded the same judge's prior ruling in *Shelton*, concluded that the 2003 UPC opinion was dispositive of the UPL analysis, declined to address the timing and substance of the rulings in the *McMahon* case, in fact relied upon the vacated portion of the 2004 trial court order in *McMahon*, and did not mention the *May* case at all.

21

The district court's order on summary judgment (JA 242), and its subsequent orders in the case, entirely disregarded the development of the law. In finding liability for UPL, the district court relied upon the 2003 UPC Advisory Opinion and upon the 2004 trial court order in the *McMahon* case. This rationale is erroneous for several reasons.

First, the West Virginia state constitution vests in the West Virginia Supreme Court of Appeals "the indisputable and exclusive authority to define, regulate and control the practice of law in West Virginia." *State ex rel. Frieson v. Isner*, 168 W. Va. 758, 765, 285 S.E.2d 641, 648 (1981). The West Virginia Supreme Court has defined the practice of law to include three specific actions: (1) "to advise another in any matter involving the application of legal principles to facts, purposes or desires;" (2) "to prepare for another legal instruments of any character;" and (3) "to represent the interest of another before any judicial tribunal or officer[.]" W. Va. Code State Cr. R., *"Definition of the Practice of Law,"* at 961 (2013). It is the function of the West Virginia State Bar and the UPC to address "all matters and questions which may be considered as constituting the unlawful practice of law under the definition of the practice of law adopted by the supreme court of appeals of West Virginia . . . ," West Virginia State Bar By-Laws, Art. VII § 1, but not, as the district court presumed, to affirmatively define the unauthorized

22

practice of law, *cf. State ex rel. Nationwide Mut. Ins. Co. v. Karl*, 222 W. Va. 326, 331, 664 S.E.2d 667, 672 (2008) ("[O]pinions issued by the Lawyer Disciplinary Board are not binding upon [the West Virginia Supreme Court].").  Further, even if the UPC possessed the authority to declare notary closings to be *per se* UPL, it did not possess the authority to do so inconsistent with the rulings of the West Virginia Supreme Court of Appeals.  Yet that is the legal authority that the district court's ruling below would give to the UPC because it would subordinate to Advisory Opinion 2003-01 the West Virginia Supreme Court's contrary ruling in the *McMahon I* case in 2004 that further factual development was needed to determine whether a lay-witnessed closing involved UPL.  *McMahon I*, 216 W. Va. 413, 607 S.E.2d 519 (declining to adopt the expansive definition of UPL that the district court below concluded was promulgated in Advisory Opinion 2003-01).

Second, the UPC did not actually determine in Advisory Opinion 2003-01 that notary-witnessed closings were the unauthorized practice of law.  The UPC opined in 2003 that the act of obtaining signatures on documents was a clerical or ministerial act that did not constitute the practice of law.  (JA 86.)  Among the fourteen discrete components of a loan closing that it delineated, the UPC included the following:

11. Attending the closing and obtaining appropriate signatures on documents;

12. Attending the closing and answering buyer and/or seller questions about documents and/or the transaction;

(JA 88-89.) The UPC distinguished "obtaining appropriate signatures on documents" from "answering buyer and/or seller questions about the documents and/or the transaction." (*Id.*) The UPC went on to explain that the components of closings that involve the practice of law were those for which "legal principles [were] applied to the factual situation to determine if and how the transaction should be concluded." (JA 88.) For example, the UPC stated that "buyers and sellers will have questions about the transaction and the documents, which answers necessarily go to their respective legal rights and obligations. Such answers are advising on legal matters." (JA 90.) (emphasis added). In contrast, the UPC also explained that certain things were not legal in nature, but rather were "ministerial and clerical functions [that] occur as part of a real estate closing." (JA 99.) Among the non-exhaustive list of examples, the UPC identified "simple execution of documents" as a clerical or ministerial function. (*Id.*) Thus, on its face the UPC gave specific guidance to Defendants (and the public): the "obtaining appropriate signatures on documents" step of a closing is a ministerial or clerical function that does not constitute legal practice; while giving answers to "questions about the

24

transaction and the documents … that go to their respective legal rights and obligations" is the practice of law. (*Id.*)  To the extent it was even proper for the district court to rely upon the 2003-01 Advisory Opinion, the district court erroneously interpreted it as including a *per se* prohibition on notaries obtaining signatures from borrowers at closing.

Third, paramount legal authority established that notary-witnessed closings were not UPL prior to November 17, 2010 (at the earliest) unless the notary actually dispensed legal advice.  As is indicated above, the existing authority from the West Virginia Supreme Court, given in 2004, was that a fact-based inquiry should be undertaken to determine whether UPL had occurred.  *McMahon I*, 216 W. Va. 413, 607 S.E.2d 519.  The law was consistently interpreted in this manner prior to 2010, *Shelton v. Wells Fargo Bank*, No. 3:09-cv-19, 2010 U.S. Dist. LEXIS 143609,**12-13 (N.D.W.Va. Aug. 13, 2010); and, even after 2010, the only court to consider the issue, determined that a finding of UPL should not be made unless the notary answered legal questions or otherwise dispensed legal advice, *May,* No. 3:12-CV-43, 2012 U.S. Dist. LEXIS 102956, at *19-20.  The district court erred by applying a different standard after-the-fact and by determining that appellants had engaged in UPL when, in fact, they had complied

25

with the standard of conduct enunciated by the courts – including the judge sitting in this case – during the relevant time period.

**B.    The record evidence conclusively establishes that, upon application of the proper standard, there was no unauthorized practice of law with respect to Plaintiff's loan, such that the district court erred by not granting summary judgment to the appellants as a matter of law.**

If one applies a fact-based inquiry consistent with *McMahon I*, *Shelton*, and *May*, and asks whether there is competent record evidence that Mr. Carenbauer answered legal questions or otherwise dispensed legal advice, the only available answer is "no."  Mr. Carenbauer's only tasks were to make sure Plaintiff signed the loan documents where a blank for Plaintiff's name was indicated on those documents.   (JA 317 at 35:7-15.)   Plaintiff asked no questions; none were answered; and Mr. Carenbauer did not explain the terms of any of the documents or otherwise advice Plaintiff.  (JA 304-05 at 134:21-135:2.)  Put differently, Mr. Carenbauer provided no legal advice and therefore did not engage in UPL based on the standards for assessing a claim prior to November 17, 2010.  The district court erred by concluding otherwise.

Perhaps seeking to avoid this conclusion, the district court determined that, because no attorney was present at signing, Plaintiff was deprived of the opportunity to ask questions about his loan.  The district court further determined –

26

based on Plaintiff's opinion testimony about what a lawyer would have told the Plaintiff – that a lawyer would have advised Plaintiff not to accept the subject loan because it raised his interest rate. The district court's determinations in this regard are erroneous for several reasons. First, as a non-attorney, Plaintiff could not offer testimony concerning what a lawyer would or would not have said to him, Fed. R. Evid. 701, and Plaintiff's improper testimony did not provide a basis for Plaintiff avoiding summary judgment. Second, Plaintiff's speculation failed to take account of the ethical standards applicable to attorneys conducting real estate closings in West Virginia. Under Legal Ethic Inquiry (L.E.I.) 89-01, any attorney representing the lender at a closing or any lender engaged in a dual representation of the borrower and the lender would have been ethically prohibited from acting contrary to the lender's interest and advising Plaintiff not to accept the loan. And neither Plaintiff, nor the district court, has identified any legal requirement that they contend requires a lender to provide an attorney specifically to represent the borrower, and, indeed, no such legal requirement exists.[2] Third, Plaintiff presented no evidence that the appellants prevented him from speaking with an attorney prior to closing or during the three-day post-loan cancellation period that exists fro all

---

[2] Simple logic dictates that not giving legal advice cannot be "practicing law". Though couched as a UPL claim, Plaintiff actually succeeded in convincing the district court to impose a legal duty upon the lender to provide counsel to Plaintiff and to hold it liable for failing to do so. However, there is no legal support, under the WVCCPA or otherwise, for imposing such a duty.

27

residential home mortgage loans if he so chose.  Accordingly, Plaintiff has no evidence of the actual harm element necessary to establish an UPL claim.  For this reason also, the district court erred by granting summary judgment to the Plaintiff and by denying summary judgment to the appellants.

### C. The district court erred by refusing to dismiss Plaintiff's UPL claim based on the statute of limitations.

A claim in West Virginia for UPL is governed by a two-year limitations period under a statute of limitations if Plaintiff seeks damages and under the doctrine of laches if Plaintiff seeks declaratory or equitable relief.  *Heavener v. Quicken Loans, Inc.*, No. 3:12-CV-68, 2013 WL 2444596, at *5 (N.D.W.Va. June 5, 2013); *May v. Nationstar Mortg., LLC*, No. 3:12-CV-43, 2012 WL 3028467, at *7 (N.D.W.Va. July 25, 2012); W. Va. Code § 55-2-12.  In the case *sub judice*, Plaintiff affirmatively alleged that the named Plaintiff's loan closed on May 30, 2005, and he waited to file his complaint until more than three years later, on November 7, 2008.  Accordingly, the district court erred by failing to grant appellants' motion to dismiss Count I.  (Dkt. Nos. 222, 223 & 231)

US2008 6105817 13

III.    **THE DISTRICT COURT ERRED BY ADJUDICATING AND ENTERING JUDGMENT IN FAVOR OF PLAINTIFF ON CLAIMS THAT WERE NOT PROPERLY INCLUDED IN THE LITIGATION.**

### A.    The district court erred by permitting plaintiff to proceed on claims that were not properly pled.

The one – and only – Complaint filed in this action alleges that the appellants engaged in UPL, and it perhaps alleges that the UPL constituted an unfair trade practice under the WVCCPA.  It does not reference any excessive notary charges.  Nor does it allege that Plaintiff had an unconscionable loan. However, the district court permitted Plaintiff to proceed upon, and actually granted judgment to Plaintiff on, claim theories of overcharging for notary services and origination of a procedurally unconscionable loan.  (JA 742.)  In doing so, the district court erred as a matter of law.

In the proceedings below on summary judgment and on appellants' motions to dismiss (Dkt. No. 222 and 223) and to disallow evidence and arguments concerning claims not pled (Dkt. No. 208), Plaintiff did not deny that he had changed his claim theories.  Rather, Plaintiff argued that (1) he had pled the entire statutory text of the WVCCPA, such that his Complaint included the otherwise distinct and unrelated provisions governing unconscionability (Section 46A-2-121, located in Article 2) and unfair trade practices (Sections 46A-6-104 and -105, located in Article 6); (2) the changes in the case were disclosed in discovery and in

the class certification proceedings; and (3) appellants should not be permitted to challenge his unauthorized changes to the case because appellants had taken the precaution of securing experts and other discovery to defend against the unpled claims in the event that the district court permitted Plaintiff to proceed on these theories. (Dkt. No. 214.) Plaintiff's excuses provide no basis for the district court allowing him to proceed on the unpled claims. It is an abuse of discretion for the district court to consider a claim where the plaintiff failed to plead the claims and the defendant "never conceded implicitly or explicitly" that the claim was at issue. *Pinkley, Inc. v. City of Frederick, MD.*, 191 F.3d 394, 401 (4th Cir. 1999); *see also Elmore v. Corcoran*, 913 F.2d 170, 173 (4th Cir. 1990) ("In our view, the district court abused its discretion in the present case by deeming the complaint amended to encompass an issue that was not tried with the consent of the parties.").

As Plaintiff did not set out the unconscionability and notary fee theories in the Complaint, the Complaint literally failed to state plausible claims upon which relief could be granted with respect to these theories. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief.") ; *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (emphasizing that a plaintiff must allege "more than labels and conclusions" and that "a formulaic recitation of the elements of a cause of action will not do.") The district court

US2008 6105817 13

could not lawfully permit Plaintiff to amend his claims in discovery, in summary judgment briefing, or in any other document other than a properly amended pleading. *Wahi v. Charleston Area Med. Ctr., Inc*., 562 F.3d 599, 617 (4th Cir. 2009) ("[A] plaintiff may not raise new claims after discovery has begun without amending his complaint."); *Cloaninger v. McDevitt*, 555 F.3d 324, 336 (4th Cir. 2009) (same).    Accordingly, the district court erred by entering judgment in Plaintiff's favor on the unpled claim claims for notary fees and unconscionability.

### B.    The district court erred by re-casting Plaintiff's claim theories for purposes of entering judgment on damages.

In its order granting summary judgment to Plaintiff, the district court determined that appellants were liable: (1) on the declaratory judgment claim concerning UPL in Count I, (2) on the unpled notary fee theory under the existing overcharging claim in Count V, and (3) on the unpled procedural unconscionability theory, based on UPL, under the WVCCPA claim in Count X.    (JA 742.)    The district court's summary judgment analysis expressly held that the section of the WVCCPA governing unfair trade practices did not apply and it did not include any determination that any notary charges violated the WVCCPA.    (JA 764-66, 69.) Rather, consistent with prior proceedings in the case, the district court's summary judgment order contemplated that there could be, at most, one civil penalty awarded against appellants in the case. *Id.; see also Dijkstra v. Carenbauer*, No.

31

5:11CV152, 2012 WL 1533485, at *6 [Doc. 69 at 14] (N.D.W. Va. May 1, 2012)

("[The] WVCCPA authorizes up to $4500 for each statutory violation. As of August 24, they could have ascertained that [the estimated] 851 class members would seek as much as $3,829,500 in statutory violations."). Then, in its July 16, 2014 class damages order, the district court re-characterized the WVCCPA claim as a claim for unfair trade practices and awarded a second civil penalty related to the unpled notary fee theory. (JA 1295.) The district courts' further expansion of the WVCCPA claim is unsupported by the pleadings or its prior summary judgment order and should be reversed.

## IV. ASSUMING, ARGUENDO, THAT IT WAS PROPERLY INTRODUCED, THE DISTRICT COURT ERRED BY NOT ENTERING JUDGMENT IN FAVOR OF APPELLANTS ON THE NOTARY FEE CLAIM THEORY.

At some point during the litigation, Plaintiff began contending that he was overcharged for notary services. Plaintiff argued that the West Virginia Uniform Notary Act (the "Notary Act") permitted a charge of only $2 per notarial act and that he had been subjected to an excess charge under that statute. (JA 1299.) The district court adopted Plaintiff's theory, and, indeed, expanded upon it by ruling that the maximum notary fee was $2 per loan rather than $2 per notarial act and by tacitly ruling that a flat fee for notary services is improper, even if the amount of the fee is less than the total amount that could be charged for notary services based

32

on a strict statutory calculation.  (*Id.*)  The analysis disregarded the law concerning notary fees and the record evidence submitted below.

Under the version of the Notary Act in effect at the time, W. Va. Code § 29C-1-101 *et seq.* (2013), a notary could charge two dollars for each signature notarized; for each act of certifying, retaining, and recording facsimiles of a document; and for each other notarial act performed. W. Va. Code § 29C-4-301. Notaries also were permitted to charge for other services as provided by W. Va. Code §§ 59-1-7 and -11. *See, e.g.,* W. Va. Code § 59-1-11 (2013) (permitting $1 per page for copies).

Appellants demonstrated that Plaintiff's loan closing involved no fewer than thirty-five signatures that were made before the notary (not counting instances where two originals were signed or the document contained two separate signatures), seven signatures that were notarized, and thirty sets of initials that were made before the notary.  That includes a potential of seventy-two notarial acts, for which $144 could have been charged.  Further, Mr. Carenbauer testified that he printed off two copies of each document. At one dollar per printed page, Mr. Carenbauer could have charged $132 (sixty-six pages multiplied by two).  (JA 1230 at 34:5-23 (testimony by Mr. Carenbauer noting that he printed two copies of

33

the documents – one to return to the lender and one to leave with the borrower).)
The district court completely ignored this evidence.

Appellants also pointed to undisturbed West Virginia case law that supports
a notary charging for providing services other than merely notarizing documents,
such that charging for performing the signature portion of a closing was not
unlawful prior to the district court's decision in this case.  (Dkt. 238 at 17 n. 11)
*Cf. Ewers v. Montgomery*, 68 W. Va. 453, 69 S.E. 907, 907 (1910) (holding that
notary could proceed with wage claims where he had been retained to perform
other services in addition to his notarial duties, and the defendant had "cited to no
authority and [the court knew] of none limiting the rights of a notary public when
thus employed, simply because he is a notary public, to the statutory fee for taking
acknowledgments.").   The district court disregarded this argument without
addressing it.

Finally, to the extent it could be construed as arising under the overcharging
claim, appellants moved to dismiss Plaintiff's notary fee theory as barred by the
two-year statute of limitations.  *See Holmes v. Chesapeake Appalachia, LLC*, No.
5:11-CV-123, 2012 WL 3647674, at *9 (N.D.W.Va. Aug. 23, 2012); W. Va. Code
§ 55-2-12(a).  The district court erroneously failed to dismiss the claim theory as
time barred.  (JA 932 (denying Dkt. No. 222.))

34

Upon proper consideration of the above-referenced evidence and legal authorities, appellants were entitled to judgment as a matter of law on Plaintiff's notary fee theory. The district court's rulings to the contrary are reversible legal error that should be reversed.

## V. ASSUMING, ARGUENDO, THAT IT WAS PROPERLY INTRODUCED, THE DISTRICT COURT ERRED BY NOT ENTERING JUDGMENT IN FAVOR OF APPELLANTS ON THE WVCCPA UNCONSCIONABILITY CLAIM THEORY.

The district court's grant of summary judgment on the unconscionability claim is derivative of the district court's ruling on the UPL claim. It is contrary to law for the same reasons and should be reversed.

Further, a party claiming a contract is unconscionable must demonstrate – "at least in some small measure" – both procedural and substantive unconscionability. *Dan Ryan Builders, Inc. v. Nelson*, 230 W. Va. 261, 289, 737 S.E.2d 550, 558 (2012); *Robinson v. Quicken Loans Inc.*, Civ. Act. No. 3:12–0981, 2012 WL 3670391, at *1 (S.D.W. Va. Aug. 24, 2012). The district court failed to hold plaintiff to his burden of proof with respect to either prong. The sole basis for the court's procedural unconscionability determination was the incorrect conclusion about UPL in the signature portion of the loan closing. Stated differently, the district court created a standard that does not exist – a duty to provide Plaintiff with a lawyer who would advise him about the loan terms – and

35

grounded procedural unconscionability in non-compliance with a non-existent standard. It is not necessarily the case that a mortgage loan would be procedurally unconscionable simple because a lawyer did not attend the closing; indeed, such a loan definitely would not be procedurally unconscionable if the absence of an attorney did not influence the borrower's decision. Syl. Pt. 10, *Brown v. Genesis Healthcare Corp.*, 729 S.E.2d 217, 220 (W. Va. 2012) ("Procedural unconscionability is concerned with inequities, improprieties, or unfairness in the bargaining process and formation of the contract. Procedural unconscionability involves a variety of inadequacies that results in the lack of a real and voluntary meeting of the minds of the parties, considering all the circumstances surrounding the transaction.").

Further, the court did not make the requisite finding of substantive unconscionability and instead held only that Plaintiff was disadvantaged because he had refinanced to a higher interest rate than the interest rate for his immediately preceding mortgage loan. To the extent such a circumstance could support a determination of substantive unconscionability, it was error for the district court to grant summary judgment to Plaintiff without any consideration by the district court of whether the interest rate for the subject loan was appropriate. Further, because the record did not support determinations of both procedural and substantive

36

unconscionability, the district court erred by not allowing summary judgment to the appellants.

## VI. THE DISTRICT COURT'S ORDERS IMPOSING LIABILITY AND DAMAGES BASED ON THE RETROACTIVE APPLICATION OF LATER-ESTABLISHED LEGAL PRINCIPLES CONCERNING UPL AND NOTARY FEES RUN AFOUL OF CONSTITUTIONAL DUE PROCESS CONCERNS.

As is explained above, the district court (1) applied *McMahon II* retroactively as a basis for finding appellants liable for UPL and for subjecting them to civil penalties under the WVCCPA, and (2) established a new standard prohibiting a flat fee for notary services provided at a loan closing even if the amount of the fee is less than the total allowable per-notarial-act charge and also applied this standard retrospectively as a basis for imposing damages and civil penalties. Due process precluded the district court from proceeding in this fashion.

Particularly if a defendant will be subject to punitive damages or civil penalties, due process requires that a defendant receive pre-conduct notice that the acts giving rise to the penalty potentially were illegal. *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574 n.22, 574-85 (1996) ("The strict constitutional safeguards afforded to criminal defendants are not applicable to civil cases, but the basic protection against 'judgments without notice' afforded by the Due Process Clause . . . is implicated by civil penalties.") (citations omitted). There was no pre-conduct notice here. In 2005, when Plaintiff's loan closed, appellants could not

possibly have known that Mr. Carenbauer's act of handing loan closing documents to Mr. Dijkstra to obtain his signature upon them was UPL, as the then-existing legal guidance (the 2003-01 Advisory Opinion) stated that obtaining signatures in such a manner was "ministerial" or "clerical", not the practice of law. Nor could Defendants have known that failing to have a lawyer perform all aspects of the closing, including obtaining signatures, would violate West Virginia law; as of 2005, the law remained unsettled, as the West Virginia Supreme Court had been asked to hold that lawyers must close real estate loans in 2004 in *McMahon I* — and had declined to do so. Similarly, appellants could not have predicted that charging a flat fee for notary services, regardless of the fact that the total amount of the notary charge was not excessive, would subject them to liability and to civil penalties, as there was no guidance establishing this proposition prior to the entry of the district court's order below in this case.

Plaintiff contended, and the district court held below, that the UPC's 2003-01 Advisory Opinion provided the requisite notice of illegality regarding UPL. Such a reading of the Advisory Opinion cannot withstand a void-for-vagueness analysis. *See Fed. Commc'n Comm'n v. Fox Television Stations, Inc.*, 132 S. Ct. 2307, 2317 (2012) ("[T]he void for vagueness doctrine addresses at least two . . . due process concerns: first, that regulated parties should know what is required of

US2008 6105817 13

them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way."). In the context of regulatory civil penalties, the Supreme Court has held that an FCC enforcement order was void for vagueness – on an as-applied basis – where (1) one order found indecency based on a retrospective application of an FCC ruling defining indecency, and (2) another order interpreted prior FCC rulings in a manner that could not have been reasonably predicted. *Id.*

The same infirmities are present here. The 2003-01 Advisory Opinion necessarily could not have been constitutionally clear in proscribing notary-witnessed closing as UPL because the same district court judge who is presiding in this case concluded otherwise when he reviewed the Advisory Opinion in the context of the UPL claim pending in the *Shelton* case. (JA 151.) The same interpretation of the Advisory Opinion was adopted by his sister district court judge in the *May* case, as well as the West Virginia Supreme Court in *McMahon I*, by the interveners in the *McMahon* case (the West Virginia Bankers Association and the West Virginia Association of Community Bankers), and by the American Bar Association in conducting a 2009 survey of the law. (JA 932.) Similarly, there was no forerunner to the district court's pronouncement of the law governing how notary fees may be calculated.

39

Given the lack of clarity in the law during the relevant time period, constitutional due process safeguards precluded a finding of liability and the imposition of civil penalties on the UPL and notary fee theories.  The district court's contrary rulings are legally infirm and should be reversed.[3]

## VII.  THE DISTRICT COURT ERRED BY IMPOSING DAMAGES AND PUNITIVE CIVIL PENALTIES THAT ARE UNSUPPORTED BY EVIDENCE OR BY LAW.

In its order on class damages, the district court awarded (1) "a mid-range, inflation-adjusted civil penalty pursuant to W. Va. Code Section 46A-5-101 of two thousand dollars ($2,000) for each class member for the defendants' [UPL]," and (2) "a mid-range, inflation-adjusted civil penalty of two thousand dollars ($2,000)" for notary overcharging.  (JA 1298-99.)  There was no detailed analysis of the bases for these penalties.  Rather, with respect to the UPL theory, the court stated only that the "use of a notary foreclosed the opportunity to ask questions about the documents or the terms of the loan for these class member, matters which have the potential to affect what is likely the largest investment of their lives" and that eight of 692 loans in the class occurred after the *nunc pro tunc* entry date of *McMahon II*.  (JA 1298.)  For the notary fee theory, the court stated only that "the defendants did not charge on the basis of the statutory fees, but rather charged on a different

---

[3] The district court also erred by disregarding and declining to acknowledge or address Appellants' constitutional arguments in the proceedings below.

basis, with the charges running from $90.00 to $275.00 [per loan in the class]" when, in the court's view, "[t]here is no authority for a notary to charge in this fashion." (JA 1299.) The district court also awarded "disgorgement" of the notary fee associated with each class member's loan, minus $2. (JA 1299-1300.) Each of the district court's damages rulings is erroneous.

### A. The requirement for refunds to class members and the statutory civil penalty awards should be reversed because they are inconsistent with *McMahon II*.

The underlying trial court order in *McMahon II* was a stipulation and agreed order submitted by the parties and entered by the court. According to the Order, "[t]he express purpose of the parties in entering into and agreeing to [it was] to clearly define what constitutes the unauthorized practice of law in the State of West Virginia relating to real estate transactions of property located within the boundaries of the State." (JA 108-09.)

The conduct complained of in the underlying suit was that, as part of a home mortgage loan refinance transaction between Decision One Mortgage Company, LLC and Plaintiff Lorrie *McMahon*, Decision One obtained the assistance of non-lawyers not under the direct supervision of a West Virginia licensed attorney to conduct a title examination, to issue a title insurance policy, to conduct a real estate closing, engage in escrow services, and to perform other title-related

41

services. (JA 109.) Ms. McMahon was "responsible to pay for the costs and expenses for such work." (JA 109, 111-12.). Thus, the *McMahon* case also presented issues of allegedly improper charges for services that the court determined should have been provided by attorneys. The trial court order ultimately determined that a real estate closing must be conducted either by an attorney licensed to practice law in West Virginia or by a person acting under the direct supervision of an attorney licensed to practice law in West Virginia. (JA 119-123.)

The trial court order underlying *McMahon II* is undoubtedly prospective with respect to the imposition of damages and civil penalties. Specifically, out of an apparent recognition that, at a minimum, the interpretation of the law was being changed, the Order states, "This Agreed Order shall be entered on March 31, 2010, subject to approval by all counsel and shall commence upon May 15, 2010[;] if Defendants and/or Interveners fail to fully comply with any requirement and/or provision of this Order, Defendants and/or Interveners may be charged with contempt." (JA 123.) The defendants who were named in the action were immediately enjoined from conducting business in a manner inconsistent with the Order, and the interveners, the West Virginia Bankers Association, Inc., and the West Virginia Association of Community Bankers, Inc., were given time – 45 days

42

from entry – to notify their members of the change. (JA 124.)  In turn, those members were given time to adjust to the change, and the injunction against those members engaging in conduct contrary to the Order did not become effective until the expiration of those 45 days.  (JA 124.).

Perhaps most significant to the present inquiry: no damages, penalties, refunds, disgorgement, or attorneys' fees were required to be paid in connection with any past violations.  (JA 124.) ("Neither the Interveners, nor their members shall be assessed any monetary damages, costs or attorney fees in this action."); (JA 124.) ("Each party shall be responsible for its own costs and attorney fees in this proceeding and through appeal."). Further, there was no provision of the 2010 Circuit Court Order requiring the disgorgement or refund of any closing costs. Each of these provisions was contained in the trial court order that the West Virginia Supreme Court of Appeals held to be "plainly right".  (JA 104.) There was no exception for the provisions of the 2010 Circuit Court Order determining that damages, penalties, refunds, disgorgement, or attorneys' fees should not be assessed.

The district court erred by accepting Plaintiff's invitation to depart from *McMahon II*'s no-damages precedent for pre-*McMahon II* conduct.  For this reason

43

alone, the district court's entire July 16, 2014 damages order should be vacated and reversed.

**B.    The civil penalty awards should be reversed on constitutional principles because they were entered without fair notice and were arbitrary.**

A civil penalty awarded under Chapter 46A of the West Virginia Code involves "both compensatory and punitive characteristics," and is "limited by the requirements of due process," which "demands not only that penalties be *abstractly fair*, but also that a person not be penalized without *reasonable warning* of the consequences of his acts." *Vanderbilt Mortg. and Fin., Inc. v. Cole*, 230 W. Va. 505, 512, 740 S.E.2d 562, 569 (2013) (emphasis in original).  To be abstractly fair, the penalty cannot be grossly excessive or arbitrary.  *Id.* at 513, 740 S.E.2d at 570.

As is explained above in Section VII, the fair notice requirement could not have been satisfied in this case.  Further, as is explained below in Section VIII(D), both civil penalty awards were entirely arbitrary.  There is no indication in the district court's orders that the court did anything other than pick a number out of the air.  The court did not apply the factored tests suggested by either party and made no allowance for what the facts may have been for any loan in the class.

44

Accordingly, the district court's damages order cannot withstand constitutional scrutiny.

### C.    The district court erred by awarding any damages and civil penalties because there was no finding of a complete violation of the WVCCPA.

As is explained above in Section VI, the district court failed to make a determination with respect to the named Plaintiff's loan or with respect to any of the class members' loans that there was *both* procedural *and* substantive unconscionability. Absent a finding as to both prongs of the unconscionability analysis, there was no definitive finding of unconscionability, and consequently, the district court erred by awarding civil penalties under the WVCCPA for unconscionability.

Similarly, the district court failed to enforce the requirement that Plaintiff actually prove for himself and for each class member that, based on Plaintiff's analysis of permissible notary fees, there was an excess charge for notary services. Plaintiff submitted no such evidence for himself or for any member of the class, and appellants demonstrated that, for Plaintiff, there was no excess charge. However, the district court refused to consider whether too much was charged and instead concluded, without any supporting evidence, that a supposedly incorrect method of charging necessarily meant that the incorrect amount was charged. As it

45

was not supported by the record or the law, the district court's award of statutory penalties based on overcharging for notary services is improper and should be reversed.

> **D.**    **To the extent it could award civil penalties at all, the district court erred and abused its discretion by enhancing the civil penalties above the minimum possible penalty because Plaintiff presented no evidence that would justify an enhancement.**

When it applies, Chapter 46A of the West Virginia Code permits, upon a finding of a violation, "a penalty in an amount determined by the court not less than one hundred dollars nor more than one thousand dollars." W. Va. Code § 46A-5-101(1). The statute further provides:

> In any claim brought under this chapter applying to illegal, fraudulent or unconscionable conduct or any prohibited debt collection practice, the court ***may*** adjust the damages awarded pursuant to section one hundred one [§ 46A-5-101] of this article to account for inflation . . . .

W. Va. Code § 46A-5-106 (emphasis added). Thus, the statute permits the court – but does not require it – to adjust an award to account for inflation. *Id.*

In the proceedings below, Plaintiff provided no basis for departing from a minimum statutory penalty. In other contexts, courts sitting in West Virginia have increased statutory civil penalties under the WVCCPA if: (1) there was reprehensible conduct by the defendant; (2) there is a need to compensate those

46

who have experienced the oppression and abuse of debt collection calls but "who have suffered no quantifiable harm," and (3) to punish bad actors, particularly debt collectors, who act in bad faith in bringing about that oppression, abuse, and emotional distress. *Cole*, 230 W. Va. at 511, 740 S.E.2d at 568; *Finney v. MIG Capital Mgmt., Inc.*, No. 2:13-02778, 2014 WL 1276159 (S.D.W. Va. Mar. 27, 2014); *Clements v. HSBC Auto Fin., Inc.*, No. 5:09-CV-00086, 2011 WL 2976558, at *7 (S.D.W. Va. July 21, 2011).

Plaintiff presented no evidence that the use of notaries to conduct the signature portion of the putative class members' loans, if it was incorrect to do so in the first place, was anything other than a mistake – the very same "mistake" that the district court judge himself made in the *Shelton* case and that numerous others made as well. If anything, appellants were entitled to avoid statutory damages on the basis that their putative misunderstanding of the law was premised upon a bona fide error. W. Va. Code § 46A-5-101(8) ( "If . . . is unintentional or the result of a bona fide error of fact notwithstanding the maintenance of procedures reasonably adapted to avoid any such violation or error, no liability is imposed under subsection[] [46A-5-101(1)] . . . ."). There was no evidence presented by Plaintiff that any class member was subjected to any additional stress or inconvenience as a result of a notary collecting his signatures. There was no evidence presented by

47

Plaintiff that class members other than Plaintiff were dissatisfied with their loans or suffered any other harm as a result of a notary witnessing the signature portion of their loan closing.  Further, as is indicated above, there was not even evidence that any class member was actually overcharged.

Thus, at a minimum, the district court abused its discretion by increasing the amount of the statutory civil penalties for each class member without any evidence that warranted deviation from the minimum penalty amount.  As there was no such evidence, the district court's statutory damages order should be reversed.

## VIII. THE JUDGE ERRED BY CERTIFYING THE CLASS, BY DECLINING TO DECERTIFY THE CLASS, AND BY ENTERING AN ORDER ON CLASS DAMAGES WITHOUT COMPETENT EVIDENCE OF PROPER NOTICE TO THE CLASS.

### A. The district court applied the wrong standard to UPL claims and improperly certified a class that fails to meet the commonality and typicality requirements of Rule 23 (a).

Many of the same errors that are fatal to the district court's liability and damages rulings also are fatal to the district court's rulings on class certification. The class that the District Court certified in this case consists of individuals who entered into a total of 692 loans from June 23, 2003 to May 7, 2012.  The district court found that all but eight of those loans were entered into prior to *McMahon II*. As is explained above in Section III, prior to *McMahon II*, West Virginia did not have a blanket proscription against non-attorneys obtaining signatures at closing,

48

and UPL claims were decided based on whether a lay person answered legal questions or otherwise dispensed legal advice. Because such a fact based inquiry is required for practically every loan in the class, the required elements of commonality, typicality, and predominance were lacking. *See Wal-Mart v. Dukes*, 131 S. Ct. 2541 (2011) (holding that Fed. R. Civ. P. 23(a) requires that the plaintiff must demonstrate commonality, typicality, and predominance).

To establish commonality, a plaintiff must show that there are common questions of law and fact among class members. *Id*. at 2551. "A common question is one that can be resolved for each class member in a single hearing." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006). "A question is not common . . . if its resolution 'turns on consideration of the individual circumstances of each class member.'" *Id.* There is no commonality in this case because there must be a fact specific inquiry for each and every loan closing that occurred prior to November 17, 2010, (which is nearly every loan that is at issue) to determine whether or not the unlawful practice of law occurred.

Additionally, for the purposes of class certification, typicality is lacking if the proof offered by a named plaintiff on the essential elements of his claim would not also prove the claims of the absent class members. *Dieter v. Microsoft Corp*., 436 F.3d 461, 467 (4th Cir. 2006). In this case, the individual circumstances of the

49

named plaintiff's loan closing – and each absent class member's loan closing – must be examined closely to determine whether or not legal questions were asked or answered, such that UPL occurred.  Those circumstances may be different for each respective member of the class.  Therefore, the proof that the named plaintiff must offer on the essential elements of his claim would not also prove the claims of absent class members.

Finally, "[i]f proof of the essential elements of the cause of action requires individual treatment, then predominance is defeated and a class should not be certified."  *In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774, 780 (3d Cir. 2009).  As explained above, proof of the individual elements in this case requires individual treatment for almost all of the class members because their loan closings occurred before November 17, 2010.  Therefore, the putative class lacks the required predominance for certification.

### B.  The excessive notary fee theory should not have proceeded on a class basis.

As is indicated above, the excessive notary fee theory was never properly introduced into the litigation.  For this reason alone, the theory should not have proceeded on a class basis.

Moreover, under West Virginia Law notaries are permitted to charge per-item for various services such as notarizing each signature, copying closing

50

documents, etc.  W. Va. Code § 29C-4-301; 59-1-7 & 11.  Under Plaintiff's theory, the number of services determines the amount of the fee.  The number of services will vary based on factors such as the number and length of the loan documents involved in a particular loan, the number of borrowers, and whether the notary made any copies.  To determine whether individual class members were overcharged for notarial acts, a separate calculation based on the number of services provided for each closing must be performed, and that calculation must be compared to the total charge that would be allowed in each case.  Further, because of a loan product known as "true cost," pursuant to which closing costs exceeding a certain amount would not be assessed by HLC to borrowers, it was not necessarily the case that a particular class member actually paid the notary charge listed on the HUD-1 for his loan.  Indeed, Plaintiff conceded that not every member of the class was charged for notary services.  Plaintiff also conceded that the class members often were charged different amounts for notary fees.

Based on these considerations, an individualized inquiry also is necessary to address any claim of notarial overcharging.  Because an individualized inquiry and loan-by-loan review is required to determine whether a notarial overcharge occurred in each circumstance, the class does not have the required commonality, typicality, or predominance required for certification.

51

**C.    The unconscionability claim also should not have proceeded on a class basis.**

The unconscionability theory also was never properly introduced into the litigation.  For this reason alone, the theory should not have proceeded on a class basis.

Even if it were in the litigation, however, a claim of unconscionability is not suitable for class treatment.  By their nature, unconscionability claims in West Virginia are highly individualized, fact-specific claims that require close examination of the particular circumstances of each loan transaction and the fairness of the specific loan terms for each borrower and transaction.  *See Genesis Healthcare Corp.*, 729 S.E.2d at 229 ("[C]ourts should assess whether a contract provision is substantively unconscionable on a case-by-case basis."); *Troy Mining Corp. v. Itmann Coal Co.*, 176 W. Va. 599, 346 S.E.2d 749, 753 (W. Va. 1986) (holding that unconscionability if a fact-based inquiry unique to the particular set of contracting parties and their respective circumstances).  Because unconscionability claims require such individualized review, they are rarely, if ever subject to proper class certification.

In this case, the District Court certified the class by determining "whether class members are entitled to statutory penalties for each [unspecified] violation of the [WVCCPA]."   (JA 257.)  In doing so, the court failed to acknowledge the

52

overriding individualized issues for each class member.  For example, the District Court found that, with respect to the named plaintiff's loan, the closing was rushed and that the lack of an attorney "foreclosed the opportunity that the [named] plaintiff would have had to ask questions about the documents or terms of the loan, which in [his] case, resulted in his refinancing to a higher interest rate than he had prior to the refinancing."  (JA 761.)  However, the District Court failed to recognize that to bring an unconscionability claim, similar individualized determinations would have to be made for each class member regarding whether (1) the closings were rushed; (2) the opportunity to ask questions was foreclosed; (3) a class member refinanced to an unfavorable rate or into other unfavorable loan terms; and (4) there was any causal link between a notary closing and unfair loan terms.  Those required individualized determinations for each class member that were overlooked by the District Court foreclose the necessary finding that there is commonality, typicality, and predominance amongst the class with respect to the unconscionability claim.  As a result, the class cannot be properly certified for the WVCCPA unconscionability claim.

US2008 6105817 13

**D.    The district court erred by proceeding with class damages without first determining whether proper notice was provided to class members.**

Rule 23 of the Federal Rules of Civil Procedure requires that notice be given to reasonably identifiable class members.  That notice must include certain information such as the class members' right to be excluded from the class, and the time and manner for requesting exclusion from the class.  This information is critical because "the interests of the individuals in pursuing their own litigations may be so strong here as to warrant denial of a class action altogether."  Fed. R. Civ. P. 23 advisory committee note (1966).  Additionally, "even when a class action is maintained, . . . this individual right is respected."  *Id.*  "Thus, the court is required to direct . . . notice to the members of the class." *Id.*  Without assuring that each class member has proper notice of the pendency of the litigation and the members' right to opt out, there are serious due process limitations to the action going forward.

Though the court directed Plaintiff to provide proof of notice to the class at a March 11, 2014, the court subsequently accepted and relied upon a perfunctory filing that in no way permitted the court and the parties to determine whether the notice was properly handled.  Plaintiff never provided the Court with the final version of the notice it claims was issued to the class.  Instead, Plaintiff only filed a

two page document indicating that it mailed notice to class members; that his counsel unilaterally made adjustments for returned mail with respect to deceased class members; and that no one opted out.  (JA 934.)  That filing was seriously deficient because it is impossible for appellants or the district court to ascertain verify the size of the class, the membership of the class, and whether those members who were not available to receive the notices themselves should participate in the class claims.  The district court erred by proceeding with class damages without first requiring *evidence* of notice to the class and without first addressing the administrative issues arising from the attempts to contact the class members.

### E.    The district court erred by ruling that it would conduct individual damages trials.

In its July 16, 2014 order on class damages, the district court indicated that it would hold individual damages trials for any class members who come forward with evidence of actual damages.  Appellants respectfully submit that the possible need for individual trials demonstrates a lack of predominance that is fatal to the class mechanism and that holding individual damages trials would be inconsistent with the Supreme Court's decision in *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1433 (2013).  If "[q]uestions of individual damage calculations will inevitably

US2008 6105817 13

overwhelm questions common to the class," then a plaintiff "cannot show Rule 23(b)(3) predominance." *Id.*

## CONCLUSION

For the reasons set out herein, appellants respectfully request that this Court: (1) reverse the district court's order granting judgment to Plaintiff on the UPL declaratory judgment claim and remand with instructions to enter judgment in favor of appellants on this claim; (2) reverse the district court's pretrial order denying appellants' motion to dismiss and motion to exclude evidence and arguments concerning Plaintiff's unpled unconscionability  and excessive notary fee claims  and remand with instructions to dismiss or exclude any such claims from the litigation; (3) in the alternative, reverse the district court's liability determinations on the unconscionability and excess notary fee theories and remand with instructions that judgment should be entered in favor of appellants on these claims; (4) reverse the district court's order on class damages and remand with instructions that no damages or civil penalties are to be imposed against defendants; (5) alternatively, vacate the order on class damages and remand for consideration of the law and the evidence (or lack thereof) concerning Plaintiff's request for damages; (6) reverse the district court's class certification orders; and

US2008 6105817 13

(7) allow appellants such other and further relief as the court deems just and proper.

## <u>REQUEST FOR ORAL ARGUMENT</u>

Pursuant to Fourth Circuit Local Rule 34(a), appellants respectfully request oral argument and represent that oral argument is warranted and will aid the Court's decisional process.  This case involves multiple issues of law and fact and an extensive record.  appellants submit that oral argument will assist the Court in addressing the issues presented.

US2008 6105817 13

Respectfully submitted, this the 3rd day of November, 2014.

| | |
|---|---|
| */s/ Randall L. Saunders* | /s/ *Jos. Dowdy* |
| Randall L. Saunders | Joseph S. Dowdy |
| W.Va. State Bar No. 90911 | N.C. State Bar No. 31941 |
| NELSON MULLINS RILEY & SCARBOROUGH LLP | KILPATRICK TOWNSEND & STOCKTON LLP |
| 949 Third Avenue / Suite 200 | 4208 Six Forks Road, Ste. 1400 |
| Huntington, WV  25701 | Raleigh, North Carolina 27609 |
| Phone:  (304) 526-3500 | Phone: (919) 420-1700 |
| | Fax: (919) 420-1800 |

58

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION, TYPEFACE
## REQUIREMENTS, AND TYPE-STYLE REQUIREMENT

1.    This brief complies with the page limitation of Fed. R. App. P. 32 because this brief does not exceed 14,000 words, and contains a total of 13,542 words, excluding those parts of the brief exempted by Fed. R. App. P. 32.

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14-point font.

This the 3rd day of November, 2014.


/s/ *Jos. Dowdy*
Joseph S. Dowdy
N.C. State Bar. No. 31941
KILPATRICK TOWNSEND &
STOCKTON LLP
4208 Six Forks Road, Ste. 1400
Raleigh, North Carolina 27609
Phone:  (919) 420-1700
Fax:  (919) 420-1800
*Attorneys for Petitioner*

US2008 6105817 13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on November 3, 2014, the foregoing ***Defendant Home Loan Center, Inc.'s Brief of the Appellant*** was served on the counsel for Plaintiff set out below via the court's CM/ECF system:

John W. Barrett, Esq.
Jonathan R. Marshall, Esq.
Bailey & Glasser, LLP
209 Capitol Street
Charleston, WV 25301
jbarrett@baileyglasser.com
jmarshall@baileyglasser.com

Michael A. Adams, Esq.
Hinerman & Associates, PLLC
P. O. Box 2465
Weirton, WV 26062
maa@hinermanlaw.com

Patricia M. Kipnis, Esq.
Bailey & Glasser, LLP
135 Kings Highway East, 3rd Floor
Haddonfield, NJ 08033
pkipnis@baileyglasser.com

/s/ *Jos. Dowdy*
Joseph S. Dowdy
KILPATRICK TOWNSEND &
STOCKTON LLP
4208 Six Forks Road, Ste. 1400
Raleigh, North Carolina 27609
Phone: (919) 420-1700
Fax: (919) 420-1800

60

US2008 6105817 13